MOORE, ADMR., APPELLEE, v. MIDLAND BUCKEYE FEDERAL SAVINGS & LOAN ASSN., APPELLANT.

(No. 2905—Decided April 30, 1943.)

*Messrs. Moore & Moore,* for appellee.
*Messrs. Brown & Brown,* for appellant.

PHILLIPS, P. J.   We learn from the pleadings, stock certificates, agreed statement of facts, briefs of counsel submitted to us, and argument of counsel made in this case, that O. H. Sebring died intestate in Mahoning county in 1929 owning and in possession of two

presently unassigned or unhypothecated certificates of paid-up stock in the Buckeye Building & Loan Company, an Ohio corporation and the predecessor of defendant, Midland Buckeye Federal Savings & Loan Association, a corporation organized and existing under and by virtue of the laws of the United States of America; that O. H. Sebring paid $1,800 for such certificates, which are in plaintiff's possession now; that nine years subsequent to the death of O. H. Sebring defendant cancelled such certificates and applied the value thereof toward the satisfaction of a judgment which it holds against decedent's insolvent estate, the assets of which consist of money in the amount of $3,427.61, "a number of unimproved lots," and acreage in the village of Sebring, which delinquent taxes will "approximately consume," leaving "very little if anything to distribute among the creditors"; "that there are valid general claims against his estate in the sum of approximately $200,000"; that he died indebted to defendant's predecessor, which indebtedness was evidenced by seventeen of his promissory notes secured by duly executed mortgages upon an equal number of parcels of real estate owned by him; and that judgment was entered against his estate on such indebtedness in the amount of $60,186.10.

We are further informed by such "agreed statement of facts" that plaintiff was duly appointed administrator *de bonis non* of the estate of O. H. Sebring to succeed The Guardian Trust Company, Cleveland, Ohio, resigned, who during its administration thereof filed a petition to sell all of decedent's real estate to pay debts, in which action all necessary parties were made defendants and were either duly served or entered their appearances therein; that after hearing, upon suggestion, and at the request of the creditors and heirs at law, the Probate Court "deferred" such order

of sale; that upon request of the Buckeye Building &
Loan Company, The Guardian Trust Company as such
administrator upon motion secured an order from the
Probate Court of Mahoning county to appraise and
sell all of decedent's real estate mortgaged to the
former, which it offered to purchase at the appraised
value thereof; that such real estate was sold to it for
$44,760, which sale thereafter was duly confirmed and
its mortgages thereon duly ordered released of record;
that subsequently a deed thereto was ordered made to
it upon payment of the purchase price; and that upon
motion distribution of the proceeds of such sale, after
payment of costs, attorney's and administrator's fees
was made to the Buckeye Building & Loan Company
to apply on decedent's indebtedness to it, from which
amount it was ordered to pay taxes, penalties, levied
against the mortgaged properties, and interest accrued
thereon, in accordance with a contract existing be-
tween it and the treasurer of Mahoning county, which
left a deficiency judgment in favor of defendant, Mid-
land Buckeye Federal Savings & Loan Association,
purchaser of the assets and liabilities of the Buckeye
Building & Loan Company, which is a valid general
claim against decedent's estate.

Such "agreed statement of facts" further reveals
that defendant corporation, the successor by purchase
of the Buckeye Building & Loan Company, duly au-
thorized and directed the issuance of stock therein to
holders of paid-up stock in the latter company in an
amount equal to the stock owned by its stockholders,
but upon due demand refused to pay to plaintiff or
his predecessor administrator, The Guardian Trust
Company, any of its duly authorized and declared
dividends; that plaintiff offered to surrender the
certificates of the Buckeye Building & Loan Company
now held by him and duly demanded issuance of other

certificates in defendant company evidencing the investment of a like amount to him as such administrator, which demand was refused; and that thereupon he commenced the action in the trial court which we review now.

The declaration by defendant and "payment of five separate annual dividends to all its stockholders in the amount of three and one-half per cent per annum" is also stipulated.

A concededly true copy of the original constitution and bylaws of the Buckeye Building & Loan Company is attached to the "agreed statement of facts" for our consideration, and by agreement of counsel the certificates were submitted to us for inspection during argument of this appeal. Each certificate contains the provision that it is "transferrable only on the books of the corporation on surrender of this certificate in person or by attorney, and subject to all the restrictions and provisions of the bylaws of the corporation."

There is no evidence that such certificates were pledged as security for such indebtedness; that either company retained a lien thereon; that O. H. Sebring was a depositor, special or otherwise, in the Buckeye Building & Loan Company either at or any time before his death; that the above mentioned notes were due upon his death; or that the mortgages and notes secured thereby were pledged by him as security for such mortgage indebtedness.

The trial court found that plaintiff was entitled to recover unpaid dividends in the amount of $252 due upon the two certificates of stock held by plaintiff, to which reference is made, entered judgment accordingly, and ordered defendant to execute and deliver "a certificate of paid-up stock in the defendant corporation in the sum of $1,800" to plaintiff, "administrator de bonis non of the estate of O. H. Sebring."

From the finding and judgment of the trial court defendant appeals to this court on questions of law.

The parties agree that the stipulated facts present the following questions for our consideration and determination:

"1. Did the Buckeye Building & Loan Company through its board of directors, have any legal right or authority to cancel stock certificates held by this plaintiff and apply the value thereof, namely $1,800, to the deficiency judgment due the Buckeye Building & Loan Company as herein set forth?"

"2. Did the Buckeye Building & Loan Company have any legal authority or right to refuse payment of the dividends declared upon the general stock of this corporation since the above cancellation was made?"

"Plaintiff contends that the Buckeye Building & Loan Company was without authority to cancel these stock certificates or refuse payment of dividends due on said stock; that the plaintiff at this time is entitled to an order directing the issue of new stock in defendant company in the same amount," and that plaintiff is further entitled to a judgment for declared dividends in the amount of $315.

"Defendant denies the prayer of plaintiff's petition, and claims that said Buckeye Building & Loan Company was within its legal rights in the cancellation of said stock and the application of its value as herein set forth, and that plaintiff is not entitled to any dividends declared upon the common stock, nor the issue of new stock."

In accordance with the provisions of Section 10509-121, General Code, all of the preferred claims against decedent's estate were paid and the estate being insolvent thereafter Section 10509-122, General Code, directs the *pro rata* distribution of the remaining fund among the general creditors thereof.

Upon the facts presented in this case and the law applicable thereto defendant has no lien upon and no more claim to the cancelled stock certificates, their money value, or right to cancel them or legally or equitably set them off against its deficiency judgment, as urged, than has any other general creditor of decedent's estate, notwithstanding such judgment against such estate. The allowance of such a setoff "would disturb the due course of administration and distribution of the estate." See *Downer, Admr.,* v. *State Savings & Loan Co.,* 16 C. C. (N. S.), 378, 31 C. D., 551.

However defendant claims such right by reason of the following provision of its certificates, "subject to all the restrictions of the bylaws of the corporation."

We need not determine whether, if its bylaws or the certificates contained a provision which entitled it to retain a lien upon or setoff of such stocks against the debt of decedent's estate, it could do so for the reason that a careful reading of such bylaws and certificates, to which the parties are respectfully referred, fails to disclose conference of such rights upon it.

This conclusion brings us to a consideration of defendant's contention of its right to such set-off by virtue of its claimed existent debtor and creditor relationship between plaintiff's decedent and itself by reason of the former ownership of such stock certificates.

There is undisputed evidence that during life O. H. Sebring was a debtor to Buckeye Building & Loan Company, and in our opinion convincing evidence that he was a stockholder therein.

Accordingly as the result of careful study and consideration of such contention, upon the evidence presented in this case, we are of opinion that at the time of his death O. H. Sebring was a stockholder in and not a creditor of the Buckeye Building & Loan Company; and that defendant's claimed right to such set-off for

the reason under discussion is not supported by the law of this state or its own bylaws.

From the evidence submitted to us we find no error in the trial court's allowance or computation of the amount of unpaid dividends due upon such certificates.

Defendant having no lien or claim to the cancelled stock certificates or their money value, or any right to cancel or set them off against its deficiency judgment, the judgment of the trial court must be and hereby is affirmed.

*Judgment affirmed.*

NICHOLS and CARTER, JJ., concur.